UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TOUR TECHNOLOGY SOFTWARE, INC.,

                          Plaintiff,

                -against-                      **MEMORANDUM AND ORDER**
                                                          17 CV 5817 (MKB) (CLP)

RTV, INC. *et al.*,

                          Defendants.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

      On October 4, 2017, plaintiff Tour Technology Software, Inc. ("Tour") brought this action against defendant RTV, Inc. ("defendant" or "RTV") and a number of John and Jane Does, alleging that defendants had infringed plaintiff's United States Patent No. 6,754,400 (the "440 Patent") entitled "System and Method for Creation, Processing and Visualization of Omni-Directional Images." Currently pending before this Court is plaintiff's motion to disqualify defendant's counsel, Mitchel S. Feller, Esq., on the grounds that he represented a third party who was a defendant in another case involving the same 440 Patent. (See generally Pl.'s Mot. to Disqualify, Mar. 30, 2018, ECF No. 20).

      For the reasons set forth below, the Court denies the motion for disqualification.

FACTUAL BACKGROUND

      Plaintiff Tour alleges that it is the owner of U.S. Patent No. 6,754,400 (the "400 Patent"), which enables the exploration of an indoor or outdoor location over the internet as if the person were actually at the location and looking at the scene through the selected or varying angular direction of the view. (Compl. ¶ 9, Oct. 4, 2017., ECF No. 1). Following the creation of the 400 Patent technology, the U.S. Patent Office issued the 400 Patent on June 22, 2004. (Id. ¶ 24, Ex. A). Through various assignments, the 400 Patent was assigned to Tour. (Id. ¶ 26).

Defendant RTV is in the business of providing or presenting 360 degree virtual tour content for its clients, including individuals and businesses in the United States seeking to sell, rent, purchase, lease, and/or promote private residences, hotels, sporting and recreation facilities, schools, and golf courses, among others. (Id. ¶ 32). Plaintiff alleges that RTV is literally, or through the doctrine of equivalence, directly and indirectly infringing the 400 Patent. (Id.)

Plaintiff seeks to disqualify defendants' counsel, Mr. Feller, from representing RTV in this action because Mr. Feller previously represented a different defendant in the case of Tour Technology v. Ice Portal, No. 11 CV 3912 (PKC) (E.D.N.Y. 2011), which allegedly involved the same patent and the same type of infringing activity at issue in this case. (Pl.'s Mem.[1] at 1). According to plaintiff, the prior lawsuit ended in a settlement memorialized in a confidential settlement agreement. (Id.) Plaintiff is concerned that because Mr. Feller was privy to the terms of that confidential settlement agreement, it "may be used by Defendant's counsel, Mr. Feller, to the detriment of Plaintiff Tour Technology, and give Defendant an unfair advantage in negotiation." (Id. at 2).[2]

DISCUSSION

**A. Legal Standard**

It is well-settled that the Court's authority to disqualify an attorney stems from its general supervisory power over the attorneys who appear before it. Gerffert Co. v. Dean, No. 09 CV 266, 2011 WL 683963, at *4 (E.D.N.Y. Feb. 16, 2011). "[I]n deciding questions of professional

---

[1] Citations to "Pl.'s Mem." refer to plaintiff's Motion and Memorandum to Disqualify Counsel, filed March 30, 2018, ECF No. 20.

[2] Given that plaintiff and its counsel know the terms of the confidential settlement agreement and the details of negotiations from which it resulted, it is not clear how it is unfair to plaintiff that defendant's counsel might also know those terms. Purely as a matter of fairness, what plaintiff refers to as "an unfair advantage" seems more like a level playing field.

2

ethics [people] of good will often differ in their conclusions," Fund of Funds Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977), and thus the Court has wide discretion in deciding whether to disqualify counsel. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990); Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); Gerffert Co. v. Dean, 2011 WL 683963, at *4. In exercising that discretion, the Court is mindful of its responsibility to "preserve a balance, delicate though it may be, between [the] right to . . . freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." Ernie Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 564-65 (2d Cir. 1973).

A motion to disqualify an attorney is governed by federal law. Acme Am. Repairs, Inc. v. Katzenberg, No. 03 CV 4740, 2007 WL 952064, at *4 (E.D.N.Y. Mar. 29, 2007) (citing Arifi v. De Transp. Du Cocher, Inc., 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003)). The applicable ethical rules are those provided in the New York Rules of Professional Conduct, as interpreted by the United States Supreme Court, the Second Circuit, and this Court. Id. (citing L. Civ. R. 1.5(b)(5)).

"[A]s a matter of professional responsibility, an attorney owes a duty of loyalty to his client . . . not to divulge confidential communications . . . and not to accept representation of a person whose interests are opposed to the client." Anderson v. Nassau Cty. Dep't of Corr., 376 F. Supp. 2d 294, 297 (E.D.N.Y. 2005) (quoting Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 23 (N.D.N.Y. 2002)). However, given that disqualification imposes "immediate adverse effect[s] on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons, and inevitably cause delay," courts "must demonstrate reluctance" before granting motions for disqualification. Id. (citing Board of Ed. of City of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). Disqualification

of counsel is "viewed with disfavor in this Circuit . . . because it impinges on parties' rights to employ the counsel of their choice." Intellipayment, LLC v. Trimarco, No. 15 CV 1566, 2016 WL 1239261, at *4 (E.D.N.Y. Mar. 29, 2016) (citing Stratevest Ltd. v. Rogers, 903 F. Supp. 663, 666 (S.D.N.Y. 1995); Bennett Silvershein Assocs. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)). A "high standard of proof" is thus required to succeed on a motion to disqualify counsel. Id. (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983)); see also Muniz v. Re Spec Corp., 230 F. Supp. 3d 147, 152 (S.D.N.Y. 2017) (explaining that motions to disqualify counsel are subject to "strict scrutiny" because of their "potential for abuse as a tactical device") (quoting Scantek Med., Inc. v. Sabella, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008)). Moreover, courts have noted that even when made in good faith, motions to disqualify counsel "inevitably cause delay." Intellipayment, LLC v. Trimarco, 2016 WL 1239261, at *4 (quoting Evans v. Artek Sys. Corp., 715 F.2d at 791-92).

Thus, "mere speculation" regarding the reasons supporting disqualification are insufficient, and a motion for disqualification should only be granted "if the facts present a real risk that the trial will be tainted." Muniz v. Re Spec Corp., 230 F. Supp. 3d at 152 (quoting Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010); accord Intellipayment, LLC v. Trimarco, 2016 WL 1239261, at *4. Whether to disqualify counsel "is a matter committed to the sound discretion of the district court." Intellipayment, LLC v. Trimarco, 2016 WL 1239261, at *4 (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)).

The standard for disqualification depends on whether the representation is concurrent—meaning the lawyer represents two or more current clients at the same time—or successive—meaning the attorney represents a current client against, or whose interests are adverse to those

4

of, a former client. Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005); see Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 24 (N.D.N.Y. 2002) (explaining that "[t]he conflict analysis differs depending on whether an attorney is representing interests adverse to a current or former client"). The status of the representation—and thus the test applied by the Court—is determined as of the time the conflict arises, and not at the time the motion for disqualification is filed. Anderson v. Nassau Cty. Dep't of Corr., 376 F. Supp. 2d at 298. Concurrent representation, in which an attorney simultaneously represents a client and another party with interests directly adverse to that client, is considered *per se* improper, and the attorney must be disqualified unless he or she demonstrates "at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of [the] representation." Gerffert Co. v. Dean, 2011 WL 683963, at *6 (E.D.N.Y. Feb. 16, 2011) (quoting Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d at 133) (quotation marks omitted); accord Cinema 5, Ltd. v. Cinerama, Inc. 528 F.2d 1384, 1386 (2d Cir. 1976).

The standard for successive representations is not as strict. Where a case involves successive representation, "disqualification is warranted where: '(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client.'" United States v. Prevezon Holdings Ltd., 839 F.3d 227, 239 (2d Cir. 2016) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (citing N.Y. Rules of

Prof'l Conduct 1.9(a)); accord Giambrone v. Meritplan Ins. Co., 117 F. Supp. 3d 259, 269 (E.D.N.Y. 2015) (citing Nordwind v. Rowland, 584 F.3d 420, 435 (2d Cir. 2009)).

**B. Analysis**

In moving to disqualify Mr. Feller in this case, plaintiff cites Disciplinary Rule 4-101(B)[3] which provides that a lawyer may not use a confidence or secret of his client for the advantage of a third person unless the client consents after full disclosure. (Pl.'s Mem. at 4). Plaintiff argues that here Mr. Feller's former client could not consent to such disclosure without violating its contractual obligations to maintain the confidentiality of the settlement agreement. (Id.) Plaintiff contends that Mr. Feller is clearly aware of the terms of the prior settlement and could use such knowledge unfairly against plaintiff. (Id.) Plaintiff also asserts, without citation, that allowing the use of confidential information obtained by an attorney in the course of working for another client "is unseemly and has the appearance of impropriety." (Id. at 3).

Plaintiff also cites ABA Model Rule 1.3 and argues that Mr. Feller's knowledge of confidential information which he cannot use may cause him to act without the requisite diligence in representing the defendant in this case, for fear that his advice might be tainted by the confidential information. (Id. at 4 (citing Model Rules of Prof'l Cond. r. 1.3 (Am. Bar

---

[3] The Disciplinary Rules were repealed on April 1, 2009, and have been replaced with the New York Rules of Professional Conduct. (See 31 N.Y. Reg. 99 (Jan. 28, 2009) (repealing Disciplinary Rules of the Code of Professional Responsibility and replacing them with the Rules of Professional Conduct, effective April 1, 2009)). Plaintiff has offered no explanation for citing ethical rules that are almost a decade out of date, rather than the rules that are currently in effect. Cf. N.Y. R. Prof'l Cond. 1.1(a) (explaining duty of competence); Darby & Darby, P.C. v. VSI Int'l, Inc., 95 N.Y.2d 308, 314, 739 N.E.2d 744, 748, 716 N.Y.S.2d 378, 382 (2000) (observing, under former New York Code of Professional Responsibility EC 6-2, "that attorneys should familiarize themselves with current legal developments so that they can make informed judgments and effectively counsel their clients"); see also N.Y. R. Prof'l Cond. 3.3(a)(2) (providing that a "lawyer shall not knowingly fail to disclose to the tribunal controlling legal authority known . . . to be directly adverse to the position of the client").

Ass'n)). Plaintiff argues that allowing a lawyer to occupy a position in which he might use confidential information learned during the course of negotiating a settlement agreement for another client would chill parties from entering into settlements. (Id.)

Plaintiff relies on policy arguments to support its motion for disqualification, reciting the "strong public interest in maintaining the confidentiality of settlement agreements." (Id. at 2). Plaintiff contends that confidentiality of settlement agreements is a major component of settlement strategies and that if the confidentiality is not respected, "the number of cases going to trial would increase." (Id.) Plaintiff argues that there would be no prejudice to the defendant if its counsel were disqualified because plaintiff has moved promptly and with notice to Mr. Feller that Tour intended to move for disqualification. (Id. at 5-6). Moreover, the case is still in its early stages. (Id. at 6).

The only case cited by plaintiff in support of its motion for disqualification is Bassman v. Fleet Bank, in which the court rejected arguments that counsel, who had obtained confidential information of a third party in a prior representation, was disqualified because the court found that the lawyer's contractual obligations under the prior settlement agreement conflicted with the lawyer's ability to contemplate settlement strategies in the later case. Although plaintiff asserts that the First Department affirmed the disqualification, plaintiff has not provided the citation for either the lower court decision or the decision of the First Department.[4] Such citations are

---

[4] After significant time spent searching, the Court believes plaintiff refers to the unpublished case of Bassman v. Fleet Bank, 2000 N.Y. Misc. LEXIS 659 (1st Dep't Aug. 25, 2000). In that opinion, which appears not to have been cited by any other court, the court relied on the extremely broad confidentiality provision of the settlement agreement at issue to conclude that disqualification was appropriate under the standard for disqualification applied by New York State courts. See id. at *1-2. The opinion turns on the language of the confidentiality agreement, not the ethical rules, and, in any event, is contrary to the weight of authority, as discussed infra at 9-11. Moreover, this unpublished opinion from the Appellate Division does not control the outcome in this case, where federal law provides the rule of decision. See, e.g., In re Snyder, 472

7

required by rule, see L. Civ. R. 7.1(a)(2) (requiring that any motion be accompanied by "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion"), and also by common sense. See also Governale v. Soler, 319 F.R.D. 79, 82 (E.D.N.Y. 2016) (denying as procedurally improper a purported motion that failed to provide citations to applicable law) (citing Fed. R. Civ. P. 7(b); L. Civ. R. 7.1(a)).

Defendant contends that the motion for disqualification is "baseless and frivolous." (Def.'s Mem.[5] at 1). Defendant notes that its counsel has not and does not currently represent Tour as a client and there are no allegations that counsel has obtained plaintiff's privileged information. Defendant also observes that in filing the motion, plaintiff has failed to provide the legal framework for its motion and has failed to cite a single case from this circuit or any federal court that would support disqualification on the theory advanced by plaintiff. (Id. at 3).

The Court agrees, and finds that there are no grounds for disqualification set forth in plaintiff's motion. Given the plaintiff's argument, it is clear that the representation complained of must be judged under the standard used for evaluating consecutive representations. See United States v. Prevezon Holdings Ltd., 839 F.3d at 239. With respect to the second element of the test, it appears that there may be a "substantial relationship between the subject matter of the counsel's prior representation" and the issues in the current lawsuit since both cases involved claims by Tour that Mr. Feller's clients infringed the 400 Patent. See id. (explaining that "[a] substantial relationship exists where facts pertinent to the problems underlying the prior

---

U.S. 634, 645 n.6 (1985) (observing that with respect to regulation of attorneys in federal court, "the standards imposed are a matter of federal law"); County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989) (collecting cases).

[5] Citations to "Def.'s Mem." refer to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify Counsel, filed on May 1, 2018, ECF No. 22.

8

representation are relevant to the subsequent representation") (quoting Agilent Techs., Inc. v. Micromuse, Inc., No. 04 CV 3090, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004)).

However, plaintiff also cannot satisfy either the first or third requirements of the test for disqualification. Thus, the first question is whether the moving party—here Tour—was represented by Mr. Feller in the prior action. See id. Clearly, that is not the case; Mr. Feller represented another entity that was sued by Tour. Moreover, because Mr. Feller did not represent Tour in that prior matter, there is no way that he could have had access to relevant privileged information belonging to Tour, which is the third requirement of the test. The only claim is that he is now aware of the information contained in the confidential settlement agreement entered into in that case. There is no claim that Mr. Feller violated his duty of loyalty to his former client, and no claim that he has "divulge[d] confidential communications" that he learned from his former client. Nor has there been any claim that he accepted representation of a person whose interests are adverse to those of his former client.

The claim appears to be that Mr. Feller's access to the terms of the confidential settlement agreement is detrimental to the rights of Tour and possibly that Mr. Feller will feel conflicted in negotiating a settlement on behalf of his client given that he has information regarding the prior negotiations. However, apart from plaintiff's reference to a state court decision for which no citation has been provided, and citations to precedents that merely extol the interest in the confidentiality of settlement agreements, plaintiff provides no authority for this novel proposition that this set of circumstances demands disqualification of the adversary's attorney.

In fact, plaintiff's position is undermined by several ethics opinions regarding Model Rule of Professional Conduct 5.6(b) (and its state law counterparts), which provides that "[a]

9

lawyer shall not participate in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy." Model Rules of Prof'l Conduct r. 5.6(b) (Am. Bar Ass'n 2015). For example, in 1993, the American Bar Association observed regarding the prohibition on agreements that restrict the right to practice as part of a settlement that:

> The rationale of Model Rule 5.6 is clear. First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients. While the Model Rules generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.
>
> Given the important public policies reflected in Rule 5.6, the Committee believes that the injunction of Rule 1.2 that the lawyer shall abide a client's decision regarding settlement must be read as limited by the provisions of Rule 5.6(b) and, as a result, a lawyer cannot agree to refrain from representing present or future clients against a defendant pursuant to a settlement agreement on behalf of current clients even in the mass tort, global settlement context.

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 93-371 (1993). Building on the foregoing rationale, in 2000 the ABA issued an opinion concluding that:

> Although a lawyer may participate in a settlement agreement that prohibits him from revealing information relating to the representation of his client, the lawyer may not participate or comply with a settlement agreement that would prevent him from using information gained during the representation in later representations against the opposing party, or a related party, except to the limited extent described above [*i.e.*, using confidential information against a former client to advance the lawyer's interests or the interests of another client adverse to the former client]. An

> agreement not to use information learned during the representation would effectively restrict the lawyer's right to practice and hence would violate Rule 5.6(b).

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 00-417 (2000). The New York State Bar Association Committee on Professional Ethics has cited these ABA opinions with approval, even before New York replaced the Disciplinary Rules with the Rules of Professional Conduct. See N.Y. St. Bar Ass'n, N.Y. Eth. Op. 730, 2000 WL 1692770 (2000) (citing ABA Formal Op. 00-417). Each of the ethics opinions recognizes, either explicitly or implicitly, that prohibitions on disclosure of confidential settlement information are permissible, but prohibitions on use of settlement information is inappropriate if the restriction would prevent an attorney from representing other clients in the future.[6]

It remains true that defendant's counsel possesses certain obligations with respect to confidential information derived from former clients. See, e.g., N.Y. R. Prof'l Cond. 1.6, 1.9. Even if his representation of RTV in this litigation were a violation of his professional obligations, there is no indication that any such violation would taint the trial in this case. The rules promulgated by the ABA and the State of New York "merely provide guidance" to federal courts in determining whether to disqualify an attorney, and thus "not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d at 132. Indeed, "[g]iven the availability of both federal and state comprehensive disciplinary machinery, there is usually no need to deal with all

---

[6] It is also impermissible for an attorney to request that another attorney agree to such a restriction as part of a settlement. See, e.g., Model Rules of Prof'l Conduct r. 5.6(b); Am. Bar Ass'n, Annotated Model Rules of Professional Conduct § 5.6 (8th ed. 2015) (explaining that, for example, "a plaintiff's lawyer is not allowed to promise that he will not represent anyone else with similar claims against the defendant, and the defendant's lawyer is not allowed to ask for such a promise").

other kinds of ethical violations in the very litigation in which they surface." <u>Board of Ed. Of City of N.Y. v. Nyquist</u>, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations omitted); <u>see</u> L. Civ. R. 1.5(a), (b)(5) (establishing EDNY Committee on Grievances, which may investigate and impose discipline on attorneys who appear before this Court, including those who violate the New York State Rules of Professional Conduct). That is precisely the case here. Plaintiff has made no demonstration that the underlying trial of this case on the merits would be tainted by any alleged ethical violation.

In light of the foregoing, and given that motions for disqualification are disfavored, the Court denies plaintiff's motion to disqualify defendant's counsel.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to disqualify defendant's attorney is denied in its entirety.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 2, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York